COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| SANTOS MARTINEZ SALAZAR AND WIFE, MARIA G. MARTINEZ, | § | No. 08-10-00206-CV |
| | § | |
| Appellants, | § | Appeal from the |
| | § | |
| v. | § | 293rd District Court |
| | § | |
| LESVIA AZUCENA RAMOS AND MAVERICK COUNTY INSURANCE AGENCY, INC., | § | of Maverick County, Texas |
| | § | (TC#09-02-24170-MCV-A) |
| Appellees. | | |

## **O P I N I O N**

After Santos Martinez Salazar suffered injuries in a motor-vehicle accident, Salazar and his wife, Maria G. Martinez, Appellants, filed suit against Lesvia Azucena Ramos, Maverick County Insurance Agency, Inc. (Maverick Insurance), Elizondo Trucking, Eusebio Elizondo (Elizondo), Selicita Elizondo, and Cross-Plaintiff Roberto Perez Medina alleging negligence, gross negligence, and fraud, and seeking to establish liability under the alter ego, single-business enterprise, and branded-vehicle doctrines. Ramos and Maverick Insurance, Appellees, sought and obtained a hybrid no-evidence and traditional summary judgment. Appellants filed this appeal alleging trial court error. We affirm.

## BACKGROUND

*Factual History*

On or about February 28, 2007, Appellant Salazar was a passenger in Cross-Plaintiff Medina's vehicle as they traveled on a highway in Coahuila, Mexico. A tractor-trailer displaying a brand and logo for Elizondo Trucking struck Medina's vehicle, forcing it off the road and into a

creek. The tractor-trailer driver allegedly stopped, failed to render aid or assistance, and left the scene of the accident. After Mexican authorities and emergency personnel arrived, Medina and Appellant Salazar were both transported by ambulance to a hospital with injuries.

Generosa Davila and Appellee Ramos serve, respectively, as President and Vice-President of Appellee Maverick Insurance. Maverick Insurance is operated out of Eagle Pass, Texas, and offers insurance policies to Mexican commercial carriers driving in the permitted commercial zones of the United States but does not offer policies providing liability insurance coverage to those carriers while driving in Mexico. According to Ramos, a quote is accepted if the customer signs an application and Maverick collects the insurance premium from the customer. On or about March 7, 2002, and July 10, 2003, Maverick Insurance provided to Elizondo Trucking an insurance quote for liability coverage while operating within the United States but Elizondo Trucking rejected both quotes.

Periodically, Davila and Ramos also provide services unrelated to insurance including assisting primarily Spanish-speaking customers by completing forms and translating documents for a nominal or no charge and serving as registered agents for process, a role which Ramos understood to be limited to receiving court documents and conveying them to the proper person or entity.

In 2002, several weeks after Elizondo Trucking rejected Maverick's March insurance quote, Davila provided translation and form-completion services to Eusebio Elizondo in relation to the completion of an "Application for Certificate of Registration for Foreign Motor Carriers and Foreign Motor Private Carriers," a form which was required to be completed in English and submitted to obtain authorization to transport property within the commercial zones near the United States and Mexico border. However, the application was rejected because it failed to

2

designate a registered agent and because submission of a newer form was required, which was offered in both English and Spanish. Elizondo did not request that Maverick Insurance, Davila, or Ramos correct the original application, and Ramos did not know who completed the new form for Elizondo. Ramos later discovered that Elizondo had listed her as its registered agent for service of process when the United States Department of Transportation (USDOT) began sending letters to Elizondo Trucking, with copies addressed to Ramos at Maverick Insurance's former mailing address. Some of those letters were sent directly to Elizondo Trucking in Coahuila, Mexico. Ramos did not know who designated her as registered agent for Elizondo Trucking but proceeded to inform Elizondo Trucking about the letters and asked that it refrain from using Maverick Insurance's address.

In October 2004, Ramos assisted Eusebio Elizondo with the completion of a tax application for a fuels tax license, and a standard carrier alpha code application required by U.S. Customs. At that time, Ramos asked Elizondo to remove her as Elizondo Trucking's registered agent. Elizondo allegedly complied with Ramos' request but the change was never processed. Ramos thereafter continued to inform Elizondo that she was continuing to receive correspondence from the Federal Motor Carrier Administration.

In 2006, Ramos assisted Elizondo with the completion of an amendment to a form for single state registration. Ramos had no other communication with Elizondo until she was served with the instant lawsuit, after which she verified that she had been named Elizondo Trucking's registered agent for process. Ramos notified Elizondo about the suit, and delivered the papers to Elizondo's representative. Elizondo again completed a change of registered-agent form but continued to list Maverick Insurance's address. Ramos asked Elizondo to correct the form, after which the Federal Motor Carrier Administration processed the change.

3

Elizondo never purchased an insurance policy from Maverick Insurance. Maverick Insurance did not share or have in common any employees, offices, accounting, business names, or allocation of profits with Elizondo Trucking. Ramos had no interest, ownership, or control over Elizondo Trucking or its employees. Prior to the filing of the suit, Ramos did not know Appellants or Cross-Plaintiff Medina. Neither Ramos nor Maverick Insurance own the tractor trailer involved in the accident and Maverick Insurance does not employ any persons involved in the accident.

*Procedural History*

In their first amended original petition, Appellants assert that the tractor-trailer involved in the accident was owned by Elizondo Trucking and operated by the driver in his capacity as Elizondo Trucking's agent, servant, or employee. Appellants allege that Elizondo Trucking registered its physical address in Eagle Pass, Texas so that it could obtain permission from the United States and the State of Texas to engage in the trucking industry and interstate commerce for a profit. They further contend that Ramos and Maverick Insurance are principals and agents of Elizondo Trucking and failed to implement, promulgate, mandate, and enforce appropriate safety measures to ensure the safe operation of Elizondo Trucking's vehicles in violation of a duty owed to the general public, including Appellant Salazar. Appellants alleged that Appellees represented to state and federal authorities not only that Elizondo Trucking was a "proper and compliant entity to operate as a licensed motor carrier" in Texas and the United States, but that it would abide by Texas and federal rules governing commercial motor carriers, and would at all times be financially responsible for damages caused by its commercial vehicles as required in Texas and the United States. Appellants alleged that Appellees made false representations to state and federal agencies and to the public at large to induce detrimental reliance upon such statements. Appellants further

4

assert that, in return, Appellees were to make money from the sale of a commercial vehicle insurance policy to Elizondo Trucking without honoring their responsibility to monitor and ensure Elizondo Trucking's compliance with state and federal laws. According to Appellants, Ramos and Maverick Insurance's negligence, gross negligence, and fraud proximately caused Appellants' injuries and damages. Appellants sought to impose liability upon Appellees under the alter-ego, single-business enterprise, and branded-vehicle doctrines.

Appellees filed a hybrid motion for summary judgment to which Appellants responded. In their no-evidence summary-judgment motion, Appellees alleged: (1) that Appellants' negligence claim fails because Appellees owed no duty to Appellants and Cross-Plaintiff Medina, and because there is no evidence to show Appellees' actions were the sole proximate cause of the vehicular accident in Mexico; (2) that Appellants' gross-negligence claim fails because one's conduct cannot be grossly negligent without also being negligent; (3) that Appellants' fraudulent-misrepresentation cause of action fails because Appellees made no fraudulent misrepresentation to either Appellants or Cross-Plaintiff Medina with the intention that they act upon it and because Appellants failed to prove that the alleged misrepresentation causes the complained-of injury; and (4) that the branded-vehicle doctrine fails because the truck which struck Appellant Salazar and Cross-Plaintiff Medina did not belong to Appellees. In their traditional summary-judgment motion, Appellees argued that the alter-ego doctrine was inapplicable to them because it requires proof of fraud, which Appellants failed to prove, and that the single-business entity doctrine is no longer recognized in Texas as a vehicle by which liability may be imposed upon them.

The trial court entered summary judgment without specifying the grounds upon which it relied, severed Appellees from Appellants' claims against the remaining defendants, and

5

dismissed with prejudice all claims against Appellees.

## DISCUSSION

Because the trial court severed Appellants' claims against Appellees from their claims against the Elizondos and Elizondo Trucking and rendered a final judgment in favor of Appellees, we have jurisdiction to consider Appellants' issues. *Harris County Flood Control Dist. v. Adam*, 66 S.W.3d 265, 266 (Tex. 2001) (trial court's severance order was final because it disposed of all parties and issues in the severed cause).

### *Findings of Fact Not Considered in Summary Judgment*

Preliminarily, we address the role of findings of fact in summary judgment proceedings in the trial court and in our review of summary judgment on appeal.

In their statement of facts, Appellees attempt to "incorporate the unchallenged Findings of Fact issued by the Court[.]" Appellees objected to Appellants' request for findings of fact and conclusions of law and filed their own proposed findings and conclusions under objection. The trial court "granted" Appellees' objections and entered no findings or conclusions.

The Texas Supreme Court has long held that findings of fact and conclusions of law are not appropriate in a summary-judgment proceeding because "if summary judgment is proper, there are no facts to find, and the legal conclusions have already been stated in the motion and response." *IKB Industries (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 441 (Tex. 1997); *Eland Energy, Inc. v. Rowden Oil & Gas, Inc.*, 914 S.W.2d 179, 188 n.7 (Tex.App.--San Antonio 1995, writ denied). An appellate court is not to consider the findings of fact which a trial court makes in relation to a summary judgment. *IKB Industries (Nigeria) Ltd.*, 938 S.W.2d at 441. Consequently, we do not consider any findings of fact that may exist in the record before us.

### *Standard of Review*

6

Appellants raise three issues for our consideration, each alleging that the trial court erred in granting Appellees' motions for summary judgment. We review a trial court's summary judgment *de novo*. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Our review is limited to consideration of the evidence presented to the trial court. *Mathis v. Restoration Builders, Inc.*, 231 S.W.3d 47, 52 (Tex.App.--Houston [14th Dist.] 2007, no pet.). When a summary judgment does not state or specify the grounds upon which it relies, we may affirm the judgment if any of the grounds presented in the summary-judgment motion are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989); *Prize Energy Resources, L.P. v. Cliff Hoskins, Inc.*, 345 S.W.3d 537, 556 (Tex.App.--San Antonio 2011, no pet.).

When a party files a hybrid summary-judgment motion on both no-evidence and traditional grounds, we first review the trial court's judgment under the no-evidence standard of review. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *All American Telephone, Inc. v. USLD Communications, Inc.*, 291 S.W.3d 518, 526 (Tex.App.--Fort Worth 2009, pet. denied); *East Hill Marine, Inc. v. Rinker Boat Co.*, 229 S.W.3d 813, 816 (Tex.App.--Fort Worth 2007, pet. denied). If the non-movant failed to produce more than a scintilla of evidence under the standards of Rule 166a(i), then there is no need to analyze whether the movant's summary-judgment proof satisfied the less stringent burden set forth for traditional summary judgment under Rule 166a(c). TEX. R. CIV. P. 166a(c) & (d); *East Hill Marine, Inc.*, 229 S.W.3d at 816.

A no-evidence motion for summary judgment under Rule 166a(i) is essentially a motion for a pretrial directed verdict. TEX. R. CIV. P. 166a(i); *Timpte Industries, Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009); *Rankin v. Union Pac. R. Co.*, 319 S.W.3d 58, 67 (Tex.App.--San Antonio 2010, no pet). After an adequate time for discovery, a party without the burden of proof may, without presenting evidence, seek summary judgment on the ground that there is no evidence

7

to support one or more essential elements of the non-movant's claim or defense. TEX. R. CIV. P. 166a(i); *All American Telephone, Inc.*, 291 S.W.3d at 526. The motion must specifically state the elements for which there is no evidence. TEX. R. CIV. P. 166a(i); *Timpte Industries, Inc.*, 286 S.W.3d at 310; *All American Telephone, Inc.*, 291 S.W.3d at 526. The Supreme Court has explained that Texas Rule of Civil Procedure 166a(i) does not permit conclusory or general no-evidence challenges. *Timpte Industries, Inc.*, 286 S.W.3d at 310. This requirement serves the purposes of providing adequate information to the opposing party by which it may oppose the motion and defining the issues to be considered for summary judgment. *Timpte Industries, Inc.*, 286 S.W.3d at 311, *quoting Westchester Fire Ins. Co v. Alvarez*, 576 S.W.2d 771, 772 (Tex. 1978). The trial court is required to grant the no-evidence motion unless the nonmovant produces summary-judgment evidence that raises a genuine issue of material fact regarding each challenged element. TEX. R. CIV. P. 166a(i); *Ford Motor Co.*, 135 S.W.3d at 600.

In conducting our no-evidence summary-judgment review, we will "review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Timpte Industries, Inc.*, 286 S.W.3d at 310, *quoting Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). A genuine issue of material fact exists when more than a scintilla of evidence establishing the existence of the challenged element is produced. *Ford Motor Co.*, 135 S.W.3d at 600. More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). However, less than a scintilla of evidence exists when the evidence is so weak that it does no more than create a surmise or a suspicion of a fact. *Id.* A fact question exists

8

when the summary judgment record contains inconsistent or conflicting summary-judgment proof. *Rankin*, 319 S.W.3d at 67. When a nonmovant presents more than a scintilla of probative evidence that raises a genuine issue of material fact, a no-evidence summary judgment is improper. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *compare Ford Motor Co.*, 135 S.W.3d at 600 (trial court properly granted summary judgment where plaintiffs failed to produce more than a scintilla of evidence on an essential element of their claim).

A party moving for traditional summary judgment bears the burden of showing that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). To determine if the non-movant raises a fact issue, we review the evidence in the light most favorable to the non-movant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *See Fielding*, 289 S.W.3d at 848, *citing City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). A defendant who conclusively negates a single essential element of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment on that claim. *Frost Nat. Bank v. Fernandez*, 315 S.W.3d 494, 509 (Tex. 2010).

*Alleged Error*

**1. Negligence, Gross Negligence, Duty, Proximate Cause, Branded-Vehicle Doctrine**

In Issue One, Appellants contend the trial court erroneously granted Appellees' no-evidence motion for summary judgment on Appellants' negligence and gross-negligence claims because the evidence raised a material fact question on the issues of duty and proximate cause. Appellants also assert that the summary-judgment evidence and the branded-vehicle doctrine raise a fact question that Elizondo Trucking caused the underlying accident in Mexico.

We first address Appellants' negligence contentions. A cause of action for negligence has

9

three elements: (1) a legal duty; (2) a breach of that duty; and (3) damages proximately resulting from the breach. *Praesel v. Johnson*, 967 S.W.2d 391, 394 (Tex. 1998). The threshold question, of course, is the existence of a duty. *Id*. The existence of duty is a question of law. *Joseph E. Seagram & Sons, Inc. v. McGuire*, 814 S.W.2d 385, 387 (Tex. 1991). If no duty exists, our inquiry into whether negligence liability may be imposed ends. *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex. 1998).

In their no-evidence summary-judgment motion, Appellees first alleged that no evidence establishes that Appellees owed a legal duty to Appellants. Appellees then asserted that if a duty was owed, Appellants' evidence failed to show that Appellees' actions or omissions proximately caused the vehicular accident in Mexico resulting in the complained-of injuries to Salazar and Cross-Plaintiff Medina. Appellees specifically contended that: (1) no duty was owed to Salazar, Cross-Plaintiff Medina, or Elizondo Trucking because Appellees were not insurance agents for any of these parties; (2) no duty is owed by insurance agents to the general public for providing insurance quotes to a potential insured; (3) no duty is owed by insurance agents "to verify, ensure, and/or demand" that a non-client, such as Elizondo Trucking, complies with federal and state laws; (4) no duty arose as a result of Ramos' status as a registered agent for process under 49 C.F.R. 366.1; and (5) that no evidence exists to establish either that Appellees were the sole proximate cause of the vehicular accident that occurred in Mexico or that Maverick's providing an insurance quote to Elizondo Trucking and Ramos' act of serving as a registered agent for process constituted a "substantial factor" to meet the element of proximate cause. 49 C.F.R. 366.1 (2012). Such acts were, Appellees argued, too remotely connected to the accident and injuries occurring in Mexico.

As non-movants, Appellants were required to produce more than a scintilla of evidence regarding the challenged duty and proximate cause elements of their negligence claim. *Smith*,

10

288 S.W.3d at 424. In their response to the summary-judgment motion, Appellants contended that Ramos and Maverick Insurance assumed a duty to warn them of dangers or to seek to stop the illegal violations of "the motor carrier" involved in the vehicle accident in Mexico, that the assumption of this alleged duty increased the risk of injury to Appellants, and that Appellants relied on Ramos and Maverick to render appropriate warnings or to take action to stop "the motor carrier." Appellants also asserted: (1) that Appellees had a duty "not to make misrepresentations to the government and to correct any untrue information;" (2) that Ramos and Davila's acts regarding Elizondo Trucking were made within the course and scope of their employment, agency, and status as officers with Maverick Insurance; (3) that Appellants relied upon representations made by Ramos, Maverick Insurance, and Elizondo Trucking that "they" would comply with United States safety regulations; and (4) that insurance agents and agencies, including Appellees, owed a duty to the general public, including Salazar and Cross-Plaintiff Medina, to refrain both from making misrepresentations and from aiding, abetting, encouraging, or requiring "a motor carrier or its employees" to violate federal rules and regulations governing motor-carrier safety.

Appellants also asserted that an insurance agent has a duty to take action when the agent knows that the forms which it completes on behalf of another are false or inaccurate, and that it has a duty to contact the regulating agency to report inappropriate or illegal acts to prevent the "motor carrier" from continuing operations. Because Appellees undertook actions that were outside the duties of a process agent by aiding Elizondo Trucking to obtain authority to operate in the United States and certified on forms that Elizondo Trucking would comply with federal motor-carrier safety and insurance regulations, and because Elizondo Trucking had not complied with United States safety and insurance regulations, Appellants contend that Appellees breached their duties. Appellants also assert that Appellees breached these alleged duties because they received letters

11

from the U.S. Department of Transportation informing them that Elizondo Trucking lacked proof of insurance, that an Elizondo Trucking vehicle was being operated by an unlicensed driver, and that Elizondo Trucking was not operating in compliance with federal regulations, but did not take any action to stop Elizondo Trucking from operating in violation of these safety and insurance requirements. Consequently, Appellants argued, Appellees aided and abetted Elizondo Trucking in its efforts to operate in violation of regulation, in breach of their alleged duties.

In addressing the proximate cause element of negligence, Appellants asserted that "it is certainly foreseeable to Ramos and [Maverick Insurance] that their participation in allowing Elizondo Trucking to continue to operate in violation of the safety and insurance regulations . . . would lead to the wreck caused by Elizondo Trucking where the injured party would not have the benefit of insurance coverage for Elizondo Trucking." Appellants likewise claimed that Appellees' "continuing to allow Elizondo Trucking to operate in [a] reckless and unsafe manner" and their failure to notify appropriate authorities "directly contributed to the means under which Elizondo Trucking was operating on the day of the wreck." According to Appellants, "[B]ut for Ramos and [Maverick Insurance]'s breach of the duties to warn of unsafe operation owed to [Salazar and Cross-Plaintiff Medina], Elizondo Trucking would not have been in operation in Texas and near the border at or near the time of the wreck and/or would have had insurance coverage to cover Elizondo Trucking's negligent operation of their truck." This alleged breach was, Appellants contended, a proximate cause of their injuries.

Having viewed the evidence presented by the summary-judgment motion and response in the light most favorable to Appellants, crediting evidence favorable to Appellants if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not, we find that Appellants failed to produce more than a scintilla of probative evidence to raise a genuine issue of

12

material fact regarding the element of duty in support of their claim of negligence against Appellees. *King Ranch, Inc.*, 118 S.W.3d at 751; *Rankin*, 319 S.W.3d at 62-63. Because Appellants failed to establish the existence of a legal duty, we do not reach their assertions that the summary-judgment evidence established genuine issues of material fact exist regarding proximate cause and gross negligence. *See Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex. 1998) (where no duty is established, negligent liability need not be addressed); *Wortham v. Dow Chemical Co.*, 179 S.W.3d 189, 201 (Tex.App.--Houston [14th Dist.] 2005, no pet.) (because appellants' negligence claims fail, their gross-negligence claims fail also because a finding of ordinary negligence is a prerequisite to finding gross negligence).

Appellees' no-evidence summary-judgment motion also alleged that Appellants attempts to establish liability based upon the presumption permitted under the branded-vehicle doctrine, which provides that one may conclude that a vehicle displaying the markings of an individual or corporation is the owner of the vehicle and its driver is an agent for the named party, was unsupported by any evidence. *See Empire Gas & Fuel Co. v. Muegge*, 135 Tex. 520, 143 S.W.2d 763, 767 (1940); *Rodriguez v. United Van Lines, Inc.*, 21 S.W.3d 382, 383-84 (Tex.App.--San Antonio 2000, pet. denied). Appellants responded and argued, *in toto,* "The semi-tractor trailer in question had the markings and brand of Elizondo Trucking upon it." In their brief, Appellants argue that under the branded-vehicle doctrine, the fact that Elizondo Trucking's tractor-trailer caused the accident in Mexico is established. Assuming, without deciding, that this is an accurate assertion, we remain unpersuaded by Appellants' argument that the branded-vehicle doctrine barred summary judgment because "Appellees' conduct in assisting Elizondo Trucking to obtain and maintain approval to operate in the commercial zone proximately caused the accident[.]" There is no evidence which supports a finding that the doctrine is applicable to either Ramos or

Maverick Insurance.

We conclude the trial court did not err in granting Appellees' no-evidence motion for summary judgment on Appellants' negligence and gross negligence claims, and did not err in dismissing with prejudice all claims against Appellees, including those asserting the applicability of the branded-vehicle doctrine. *See Smith*, 288 S.W.3d at 424. Issue One is overruled.

## 2. Fraudulent Misrepresentation

In Issue Two, Appellants complain that the trial court erroneously granted Appellees' no-evidence summary-judgment motion on Appellants' fraud claim because Appellees knowingly or recklessly made material representations to federal and state authorities regarding Elizondo Trucking's compliance with safety and insurance regulations. Appellants assert that they relied upon Davila, Ramos, Maverick Insurance, and Elizondo Trucking to provide truthful and accurate information to the authorities and reasonably believed "the authorities have made sure the truck complies with the necessary safety and insurance regulations . . . based upon the representations [made] by Appellees."

The elements of fraud are: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009); *Dynegy, Inc. v. Yates*, 345 S.W.3d 516, 529 (Tex.App.--San Antonio 2011, no pet.).

In its no-evidence summary-judgment motion, Appellees argued that they made no representations to Appellants or Cross-Plaintiff Medina as they did not know them. Appellees

14

also challenged Appellants' claim that Elizondo Trucking's use of Appellees' mailing address without permission and Appellees' failure to inform the appropriate authority of Elizondo Trucking's improper use of their mailing address constituted a misrepresentation to the federal authority. Appellees argued that Appellants' evidence failed to establish that Appellees made a representation to Appellants with the intent that Appellants should act upon the misrepresentation and that "the representation caused the injury."

In their response, Appellants argued that evidence showed: (1) Appellees, as or through its agents, employees, or officers, made a material representation to the regulating agencies and the traveling public, including Appellants, when writing, endorsing, or submitting an oath to comply with United States regulations; (2) compliance with said regulations did not occur, rendering Appellees' representation false; (3) when Appellees made the representation, they knew it to be false or made it recklessly because Appellees knew or should have known that Elizondo Trucking did not have insurance after Eusebio Elizondo informed Appellees that he needed insurance; (4) Appellees made the representation with the intention that the public, including Appellants and Cross-Plaintiff, should rely upon it; (5) Salazar and Cross-Plaintiff Medina acted in reliance upon Appellees' representation of compliance with federal regulations; and (6) Appellees' failure to comply with the federal regulations resulted in the vehicular accident and caused the complained-of injuries and damage. Appellants then conclude that there is "more than a scintilla of probative evidence that raises a genuine issue of material fact as to whether [Appellees] made a fraudulent misrepresentation."

After reviewing the evidence before the trial court, we find Appellants failed to produce more than a scintilla of probative evidence to raise a genuine issue of material fact regarding any element to support their claim of fraud against Appellees. *King Ranch, Inc.*, 118 S.W.3d at 751;

15

*Rankin*, 319 S.W.3d at 62-63.   Because the trial court did not err in granting summary judgment on Appellants' claim of fraud against Appellees, Issue Two is overruled.

**3.   Alter-Ego, Single-Business Enterprise, Joint-Enterprise Liability Doctrines**

As we have determined that Appellants failed to produce more than a scintilla of evidence under the standards of Rule 166a(i) to defeat the no-evidence summary judgment and that the trial court was required to grant Appellees' no-evidence summary-judgment motion, we need not analyze whether the Appellants' summary-judgment proof satisfied the less-stringent burden set forth for traditional summary judgment under Rule 166a(c).   TEX. R. CIV. P. 166a(c), (d), (i); *East Hill Marine, Inc.*, 229 S.W.3d at 816.

However, in Issue Three, Appellants complain that the trial court erred in granting traditional summary judgment under the single-business enterprise or joint-enterprise liability doctrines because Appellees did not move for summary judgment on those grounds as raised in Appellants' first-amended original petition.

A movant for summary judgment must state the grounds on which the motion is made. TEX. R. CIV. P. 166a(c); *McConnell v. Southside ISD*, 858 S.W.2d 337, 341 (Tex. 1993).   A trial court cannot grant a summary judgment motion on grounds not presented in the motion.   *Timpte Industries, Inc.*, 286 S.W.3d at 310.   We are not permitted to consider on appeal as grounds for reversal any issue not expressly presented to the trial court by written motion, answer, or other response.   TEX. R. CIV. P. 166a(c).

Our review of the record reveals that in their traditional summary-judgment motion, Appellees specifically stated that the alter-ego doctrine failed to support liability for reasons cited therein and that the single-business entity doctrine is no longer a recognized doctrine.   Appellees did not address their single-business entity doctrine grounds in a separately numbered ground as

16

Appellants did in their first amended original petition but instead addressed it in tandem with their discussion of alter ego under the heading, "No Evidence to Support Liability Under Alter Ego Doctrine." Thereunder, Appellees compared the alter-ego and the single-business entity doctrines and asserted that Appellants and Cross-Plaintiff Medina had confused the doctrines. Appellees correctly noted that the two doctrines are not synonymous and additionally showed that the Texas Supreme Court has completely rejected the single-business entity doctrine as a valid mechanism for piercing the corporate veil and imposing liability in Texas.[1] *See SSP Partners v. Gladstrong Inv. (USA) Corp.*, 275 S.W.3d 444, 455-56 (Tex. 2008) (the single-business enterprise liability theory will not support the imposition of one corporation's obligations on another as creation of affiliated corporations to limit liability while pursuing common goals is firmly within the law and commonplace).

We disagree with Appellants' assertion that Appellees failed to seek a traditional summary judgment on grounds challenging the applicability of the single-enterprise doctrine. We additionally note that Appellants' summary-judgment response neither alleges such omission nor contains any objection thereto. Instead, under the heading, "Genuine Issue of Material Fact Exists as to the Alter Ego/Single Business Enterprise Claims," Appellants countered Appellees' arguments and discussed at length that the single-business enterprise doctrine remained valid, recognized, and applicable to bar Appellees' motion for summary judgment.

Because we find that Appellees properly sought summary judgment on Appellants' single-business enterprise claim, the trial court did not grant Appellees more relief than they

---

[1] Before its demise, the single-business enterprise doctrine was identified not as a cause of action, but rather a theory for imposing liability where two business entities act as one, integrating their resources to achieve a common business purpose. *Academy of Skills & Knowledge, Inc. v. Charter Schools, USA, Inc.*, 260 S.W.3d 529, 539 (Tex.App.--Tyler 2008, pet. denied). The theory permitted the imposition of liability on each entity for acts done in pursuit of that purpose without proof of fraud. *Id.*

17

requested. TEX. R. CIV. P. 166a(c); *McConnell*, 858 S.W.2d at 341; *see SSP Partners*, 275 S.W.3d at 455-56.

Appellants also contend in their third issue that we must view their pleadings liberally to have pleaded a cause of action for joint-enterprise liability, and next assert that the trial court improperly granted Appellees' summary judgment on Appellants' claim of joint-enterprise liability because Appellees failed to challenge the joint-enterprise liability claim in their summary-judgment motion.

"Joint enterprise is a theory involving derivative liability whereby one enterprise participant may be held responsible for a cause of action proven against another participant." *In re Tex. Dep't of Transp.*, 218 S.W.3d 74, 78 (Tex. 2007), *citing Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 611-16 (Tex. 2000). The essential elements of joint enterprise are: (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control. *Able*, 35 S.W.3d at 613; *Blount v. Bordens, Inc.*, 910 S.W.2d 931, 933 (Tex. 1995).

A trial court renders summary judgment based, in part, on the pleadings that are on file at the time of the hearing. TEX. R. CIV. P. 166a(c). While there is no doubt that Appellants pleaded theories of liability including the alter-ego and single-business enterprise doctrines, our liberal reading of Appellants' live petition shows that Appellants neither nominally nor substantively pleaded joint-enterprise liability in their live petition. We specifically find no pleadings within the live petition which could reasonably be construed to assert the fourth component of joint enterprise as set forth in *Able*. *Able*, 35 S.W.3d at 613. In their summary-judgment response, Appellants neither object to Appellees' failure to challenge

18

Appellants' alleged joint-enterprise liability theory nor attempt to defeat the summary-judgment motion by presenting the joint-enterprise liability theory to the trial court. Indeed, our review of the record fails to show that the joint-enterprise liability theory was ever presented to the trial court for its consideration.

Because Appellants failed to plead the joint-enterprise liability theory and because Appellees were not required to challenge the theory in seeking summary judgment, we find the trial court neither granted summary judgment upon a theory of joint-enterprise liability nor granted more relief to Appellees than was requested. Issue Three is overruled.

## CONCLUSION

The trial court's judgment is affirmed.


GUADALUPE RIVERA, Justice

February 8, 2012

Before McClure, C.J., Rivera, J., and Antcliff, J.