COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| RONNIE FLORES, | § | No. 08-20-00154-CV |
| Appellant, | § | Appeal from the |
| v. | § | 419th District Court |
| HULL ASSOCIATES NORTH, LP AND HULL ASSOCIATES, LLC, | § | of Travis County, Texas |
| Appellees. | § | (TC # D-1-GN-20-002933) |

## **O P I N I O N**

Appellees filed a traditional and no-evidence summary judgment motion against Appellant, which the trial court granted. In two issues, Appellant asserts the trial court erred in concluding Appellees were entitled to traditional and no-evidence summary judgment.[1] We affirm.

## BACKGROUND

### *Factual Background*

Appellant, Ronnie Flores, was involved in an accident that occurred during the construction of an apartment complex known as The Michael at Presidio ("The Michael"), located in Austin, Texas. The general contractor for the project was Street Lights Residential Presidio I Construction LLC ("SLR"). As the general contractor, SLR hired several subcontractors for the construction of

---

[1] Appellant's third issue pertains to the legal standards we analyze under Issues One and Two. In accordance with legal soundness and legal efficiency, we incorporate Issue Three into our analysis of Issues One and Two.

the project, including Hull Associates North, LP ("Hull"), who was hired to perform the framing on the jobsite. As per the contractual agreement between Hull and SLR, Hull's work also included the installation of temporary ladders and guardrails on the jobsite. Specifically,

> Subcontractor [Hull] shall supply and install and be responsible for continuous maintenance of safety guardrails at all patios, balconies, breezeways, shafts, and other necessary openings and elevations in accordance with usual and customary safety standards. Subcontractor shall provide guardrail protection at all leading edges over 6' in height *throughout the course of this subcontractor's scope*, through substantial completion of cornice and punch out fur downs. Subcontractor includes an additional allowance of five (5) hours per week to reinstall guardrails that are removed and not put back up by others. [Emphasis added].

.    .    .

> Subcontractor [Hull] specifically includes temporary site built ladders as necessary to complete *their work*. Stair landings / openings shall be installed in their entirety per floor, so as to have all components of ladder system complete and correct prior to the start of the next floor. [Emphasis added].

Hull did provide temporary ladders on the jobsite. According to Hull's Senior Project Manager, Robert Simons, Hull had completed its framing work in Building 2—where the accident occurred—and neither Hull employees, nor its crew, had been in Building 2 for approximately two weeks at the time of the accident. Hull was not on the jobsite on the day of the accident.

SLR also hired MAAMECH South, LLC as the plumbing subcontractor, who in turn subcontracted the plumbing work to P&R Plumbing. Appellant was working for P&R Plumbing as a plumber at the time of the accident. The plumbers were the only trade working in Building 2 at the time of the accident.

On the morning of the accident, Appellant was installing pipes on the second floor and building 2 was wet and muddy from rain the day before. To perform his work, Appellant descended from the second floor to the first floor to get materials, and then ascended back to the second floor where he installed the pipes. Rather than using the ladders installed by Hull, Appellant

2

used a floor truss that someone vertically attached to the wall. Appellant was descending to the first floor by way of the floor truss when he slipped and fell to the ground.[2] Specifically, Appellant claimed he moved his right leg down first and, in the process, slipped and fell. As a result, Appellant underwent reconstructive hip surgery and leg surgery.

After the accident, Appellant was instructed by his plumbing employer to falsely report to Occupational Safety and Health Administration ("OSHA") investigators that he fell from a job-built ladder, rather than the truss he actually fell from. Appellant followed his employer's instructions and made a false report to OSHA claiming he fell from a job-built ladder. Appellant eventually admitted to OSHA that he fell from a floor truss and not a job-built ladder.

Although Hull purchased the truss at issue to perform its work, it denies it put up the truss to be used as a ladder and does not know who did. Hull's corporate representative testified Hull deferred to OSHA's authority and relied on OSHA to investigate the matter; according to Simons, Hull was not cited by OSHA.

### *Procedural History*

Appellant initiated suit against Hull Associates North, LP and Hull Associates, LLC (collectively, "Hull") for common law negligence, negligence per se, joint enterprise and joint venture, negligent and intentional withholding of medical treatment, and premises liability. The suit proceeded under Cause No. D-1-GN-17-003055 in the 345th District Court. Hull moved for a traditional and no-evidence motion for summary judgment as to all claims asserted by Appellant. The trial court granted Hull's traditional and no-evidence motion for summary judgment. It also sustained objections to the statements in the affidavit of Robert Simons attached to Hull's motion for summary judgment, which state: "Hull did not install or affix the floor truss on the wall and

---

[2] A truss is a pre-assembled piece of wood used in framing. It is shaped like a ladder, but is not to be mistaken or used as a ladder.

never saw the floor truss nailed to the wall prior to Mr. Flores' accident . . . Hull never saw the floor truss in use or heard of a floor truss being used prior to the accident." The trial court overruled the remainder of Appellant's objections to the affidavit.

Appellant's suit was severed into a separate action and assigned new Cause No. D-1-GN-20-002933 in the 419th District Court. Upon severance, the trial court's order constituted an entry of final judgment and Appellant timely appealed in the 419th District Court.[3]

## DISCUSSION

In Issue One, Appellant argues the trial court erred in concluding Hull was entitled to traditional summary judgment. In Issue Two, Appellant argues the trial court erred in concluding Hull was entitled to no-evidence summary judgment. We disagree.

### *Standard of Review*

We review a trial court's summary judgment *de novo*. *Salazar v. Ramos*, 361 S.W.3d 739, 745 (Tex.App.—El Paso 2012, pet. denied). Appellate review is limited to consideration of the evidence presented to the trial court. *Id*. "When a summary judgment does not state or specify the grounds upon which it relies, we may affirm the judgment if any of the grounds presented in the summary-judgment motion are meritorious." *Id*. When a party files a hybrid summary judgment motion on both traditional and no-evidence grounds, we first review the trial court's judgment under the no-evidence standard of review. *Id*. If the nonmovant failed to produce more than a scintilla of evidence under the standards of Rule 166a(i), there is no need to analyze whether the movant's summary judgment proof satisfied the less stringent burden set forth for traditional summary judgment under Rule 166a(c). TEX.R.CIV. P. 166a; *Salazar*, 361 S.W.3d at 745.

---

[3] This case was transferred from our sister court in Austin County, Texas pursuant to the Texas Supreme Court's docket equalization efforts. *See* TEX.GOV'T CODE ANN. § 73.001. We follow the precedent of the Austin Court of Appeals to the extent they might conflict with our own. *See* TEX.R.APP.P. 41.3.

In conducting a no-evidence summary judgment review, we view the evidence presented by the motion and the response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Salazar*, 361 S.W.3d at 746. A genuine issue of material fact exists when more than a scintilla of evidence of the challenged element is produced. *Id*. More than a scintilla of evidence exists when the evidence rises to a level that would allow reasonable, fair-minded people to differ in their conclusions. *Id*. However, less than a scintilla of evidence exists when the evidence is so weak it does no more than create a suspicion of a fact. *Id*. A trial court is required to grant a no-evidence motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact regarding each challenged element. *Id*.

### *Applicable Law*

When one is injured on the property in the control of another, two theories of liability can apply—negligent activity (negligence) and premises liability. *See United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 470-71 (Tex. 2017). The Texas Supreme Court has outlined the applicable theories of recovery as follows:

> [A] person injured on another's property may have either a negligence claim or a premises-liability claim against the property owner. When the injury is the result of a contemporaneous, negligent activity on the property, ordinary negligence principles apply. When the injury is the result of the property's condition rather than an activity, premises-liability principles apply.

*Id*. at 471 (citing *Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 644 (Tex. 2016)). Negligence and premises liability claims are separate, distinct theories of recovery, and are not interchangeable. *Id*. In a negligent activity case, a property owner or occupier must do what a person of ordinary prudence in the same or similar circumstances would have done, whereas a

5

property owner or occupier in a premises liability case must use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition the owner or occupier knows of or should have known of. *Id*. The distinction between these claims is based on the principle that "negligent activity encompasses a malfeasance theory based on affirmative, contemporaneous conduct by the owner that caused the injury, while premises liability encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe." *Id*. (citing *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010)).

### The Source of Appellant's Injury

We must honor the general principles that distinguish negligent activity from premises liability claims. *See id*., at 472. Appellant alleged various theories of negligence in addition to his premises liability claim against Hull. As a threshold matter, we turn to whether Appellant's injury resulted from a contemporaneous negligent activity, or a condition on the property.

In this case, Appellant alleged he was injured when he slipped and fell from a floor truss that was vertically attached to the wall. In his trial court petition, Appellant did not allege any sort of contemporaneous, ongoing activity that caused his injury. The mere fact that Appellant pleaded his claims as negligence claims does not make them so; Appellant's claims are sound in premises liability—they arise out of a truss that Appellant slipped and fell from. On appeal, Appellant attempts to assert a viable negligent activity claim and argues, because Hull was contractually required to supply, install and maintain safety guardrails, its failure to do so means "Hull maintained control over the injury causing condition or activity." We fail to see how it is leally sound to characterize the source of Appellant's injury as a negligent activity. Appellant has not alleged that Hull controlled Appellant's work and that Hull's negligent control of his work is what led to his injury. *See, e.g.*, *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992)("Recovery on

6

a negligent activity theory requires that the person have been *injured by or as a contemporaneous result of the activity itself rather than by a condition created by the activity.*")[Emphasis added].

In Appellant's trial court petition, he alleged, among other things, that Hull failed to "build and install safe ladders with adequate side rails," and "properly secure the job-made ladders." In his appellate brief, Appellant alleges he "was injured as a plumber at an apartment construction site when he fell from Hull's wooden framing truss that Hull dangerously installed as a ladder and which Hull left without warning to be used by unsuspecting plumbers who worked in the building after it was framed by Hull."

In essence, Appellant claims his injury resulted from a physical condition Hull created and then left on the premises. The Texas Supreme Court has recognized "slip/trip-and-fall cases have consistently been treated as premise defect causes of action." *United Scaffolding, Inc.*, 537 S.W.3d at 472 (quoting *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 391 (Tex. 2016))(Plaintiff claimed his injury resulted from a physical condition created and left on the premises, which the Texas Supreme Court found did not constitute a negligent activity, but rather, a premises defect). *See, e.g.*, *Keetch*, 845 S.W.2d at 264 (holding although a slip-and-fall plaintiff alleged injury as a result of grocery store plant spraying, no ongoing activity was occurring when the plaintiff was injured and thus, the claim was properly submitted as premises liability); *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 526-29 (Tex. 1997)(holding that a slip-and-fall plaintiff who alleged injury resulting from drill pipe thread protectors that were left on the ground was not a contemporaneous result of someone's negligence, but rather, was a premises defect case).

We see no reason to depart from the same conclusion here, where the only fair reading of Appellant's allegations is that his injury resulted from a physical condition—a floor truss—and not a contemporaneous activity. The lack of an allegation or evidence of a contemporaneous,

7

ongoing activity as the cause of the injury forecloses the possibility that Appellant's claim can constitute a negligent activity claim. *See e.g.*, *United Scaffolding, Inc.*, 537 S.W.3d at 472 (Employee's alleged injury arose from premise defect on scaffold, as required for premises liability theory of recovery, despite contention that injury arose from contractor's negligent activity of improperly assembling, erecting, or securing scaffolding; employee alleged he was injured when he fell through hole in scaffold and employee never alleged that contemporaneous, ongoing activity caused injury). When the alleged injury is the result of a premises condition, the injured party can only recover under a premises liability theory. *See H.E. Butt Grocery Co. v. Warner*, 845 S.W.2d 258, 259 (Tex. 1992).

We hold Appellant's alleged injury arose from a premises defect, not a negligent activity. Thus, Appellant's only potential cause of action is limited to a premises liability theory. *See H.E. Butt Grocery Co.*, 845 S.W.2d at 259. Accordingly, we need not address whether the trial court erred in granting traditional and no-evidence summary judgment on Appellant's remaining asserted grounds—common law negligence, negligence per se, joint enterprise and joint venture, and negligent and intentional withholding of medical treatment.

## Premises Liability

We now turn to Appellant's premises liability claim. In his second amended petition, Appellant asserted claims for negligence, negligence per se, joint enterprise and joint venture liability, negligently and intentionally withholding emergency medical treatment, and premises liability. Hull moved for traditional and no-evidence summary judgment on all of Appellant's claims.[4] However, Appellant did not respond to, or otherwise address, the premises liability

---

[4] In Hull's motion for traditional and no-evidence summary judgment, Hull argued it was not liable under theories of premises defect, negligent activity, common law negligence, negligence per se, joint enterprise and joint venture, and negligent and intentional withholding of medical care.

8

portion of Hull's summary judgment in his responsive pleading to the motion. Appellant only responded to Hull's claims for negligence.

Moreover, on appeal, Appellant once more failed to respond to or address premises liability in his appellate brief. There is no mention of premises liability in Appellant's brief; the entirety of his brief consists of liability theories of negligence. Hull argues the trial court's order granting summary judgment should be affirmed as to all claims on which Hull moved for summary judgment but to which Appellant did not respond. We agree.

When the trial court's order does not state the grounds on which the summary judgment is based, the appellant must show that none of the grounds proposed support the judgment granted. *Unit 82 Joint Venture v. Int'l Commercial Bank of China*, *Los Angeles Branch*, 359 S.W.3d 267, 270 (Tex.App.—El Paso 2011, pet. denied). When an appellant fails to negate each ground on which the judgment could have been granted, the reviewing court must affirm. *Id*. Thus, as the party challenging summary judgment on appeal, Appellant was required to negate *all* grounds which could have supported the judgment. *See id*. Appellant's failure to challenge the summary judgment on the premises liability ground creates a presumption it is valid. *Cuidado Casero Home Health of El Paso, Inc. v. Ayuda Home Health Care Servs., LLC*, 404 S.W.3d 737, 743 (Tex.App.—El Paso 2013, no pet.)("When a summary judgment ground goes unaddressed, its validity is presumed.") Because Appellant failed to address each ground upon which the trial court could have based its ruling, we need not reach the merits of his premises liability claim. Appellant's failure to appeal the trial court's granting of summary judgment on the premises liability claim, and the presumption of validity created therefrom, is outcome determinative.[5]

---

[5] We also find Appellant's remaining claims of negligent activity, common law negligence, negligence per se, joint enterprise and joint venture, and negligent and intentional withholding of medical care are all subsumed within the premises liability claim.

9

In Issue One, Appellant maintains the trial court erred in concluding Hull was entitled to traditional summary judgment. In Issue Two, Appellant argues the trial court erred in concluding Hull was entitled to no-evidence summary judgment. As a threshold matter, we concluded Appellant's injury arose from a premises defect; thus, Appellant's only potential cause of action is limited to a premises liability theory. *See H.E. Butt Grocery Co.*, 845 S.W.2d at 259. However, Appellant's failure to address the trial court's granting of summary judgment on the premises liability claim necessitates that the traditional and no-evidence summary judgment granted in favor of Hull be affirmed.

Issue One and Issue Two are overruled.

## CONCLUSION

For these reasons, we affirm.


July 27, 2022
YVONNE T. RODRIGUEZ, Chief Justice

Before Rodriguez, C.J., Palafox, and Alley, JJ.